IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GILBERTO CARMONA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | No. |
| ) | |
| T & L PRODUCE, INC. ) | Trial by Jury Demanded |
| d/b/a ROINS FOOD ) | |
| DISTRIBUTION, BELLISSIMO ) | |
| DISTRIBUTION, LLC, d/b/a ) | |
| GRECO & SONS, and GEORGE ) | |
| TSEKOS ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Gilberto Carmona, by his attorneys, Favaro & Gorman, Ltd., pursuant to the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.*, common law principles of retaliatory discharge, the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), complains against Defendants T& L Produce d/b/a Roins Food Distribution, Bellissimo Distribution, LLC d/b/a Greco & Sons, and George Teskos, for terminating his employment in retaliation for refusing to commit insurance fraud and for filing a workers' compensation claim and for failing to pay earned overtime wages, and states:

### Jurisdiction and Venue

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

2. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue, generally) and 29 U.S.C. § 216(b) (FLSA).

**Parties**

3. Plaintiff, Gilberto Carmona ("Carmona"), is a former employee of Defendants T & L Produce d/b/a Roins Food Distribution, George Tsekos, and Bellissimo Distribution, LLC d/b/a Greco & Sons.

4. Defendant T& L Produce d/b/a Roins Food Distribution ("RFD") is an Illinois-based corporation that was recently purchased by Defendant Bellissimo Distribution, LLC. RFD is a wholesale food delivery company.

5. George Teskos ("Tsekos") is a former owner of RFD and former officer of Defendant Bellissimo Distribution, LLC d/b/a Greco & Sons.

6. Defendant Bellissimo Distribution, LLC d/b/a Greco & Sons ("Greco") is an Illinois-based corporation and wholesale food delivery company, that purchased Defendant RFD.

**Factual Allegations**

7. Carmona was first hired by RFD and Tsekos in 2002 as a delivery driver.

8. Carmona remained employed by RFD in his capacity as a driver until his illegal firing in August 2018.

9. Carmona's job duties included delivering wholesale food orders from RFD's warehouse to various restaurants throughout the Chicago-area.

<u>Carmona regularly worked in excess of forty hours</u>

10. Historically, Carmona's shifts ran from approximately 6:00 a.m. to approximately 2:00 p.m. He worked Monday through Friday, and every other Saturday.

11. Carmona was paid $19.75 per hour for either forty or forty-eight hours per week, depending on whether he worked a Saturday that week.

2

12. Beginning in approximately January 2017, Tsekos instructed Carmona to begin his shifts at 3:00 a.m. so he could go to the market to pick up additional food for delivery. His shifts were still scheduled to end at 2:00 p.m.

13. Even though Carmona had begun working fifty-five and fifty-eight hours per week, respectively, he continued to be paid for forty and forty-eight hours per week.

14. This meant that beginning in January 2017, Carmona was working either fifteen or eighteen hours per week, for which he was receiving no compensation, including no additional overtime pay.

15. These additional hours worked by Carmona were performed off-the-clock and thus not recorded.

<u>Carmona suffers a workplace injury</u>

16. On or about July 10, 2018, Carmona injured his shoulder while making a delivery. When he returned to RFD's facility at the end of his shift, he also went to the main office to report his injury, in-person, to Tsekos. Tsekos was away from the office, and an office employee instructed Carmona to return the next day to meet Tsekos.

17. He sent Tsekos a text message late that same evening, reporting the injury and requesting that Tsekos provide him with a helper.

18. Previously, Tsekos had granted other injured drivers' requests and provided them with a helper to lift boxes for the injured driver. The helper would have lifted boxes for Carmona while Carmona drove the truck and interacted with the delivery recipients.

19. Carmona repeatedly requested Tsekos provide him a helper, via text message and in-person, but never received his requested assistance.

20. Carmona continued performing his job for approximately two weeks, working through the pain in his shoulder.

Greco purchases RFD

21. Upon information and belief, in or about approximately August 2018, ownership of RFD began to transfer. Greco had already purchased, or been in the process of purchasing RFD throughout the summer of 2018.

22. On or about July 25, 2018, RFD held a company-wide meeting. During the meeting, employees were notified of the company's purchase by Greco, informed that the transfer in ownership would take effect on Monday, July 30, 2018, that Tsekos would remain on in a managerial role, and that Mateo (last name unknown), would be promoted over Tsekos to the role of Vice President.

23. Carmona arrived late to the meeting due to his work completing his shift.

24. RFD employees, including Carmona, were also informed that they would remain employed, though they would need to fill out applications. Carmona filled out the necessary application paperwork and turned it in to a Greco representative.

25. Another employee, Omar (last name unknown), stormed out of the meeting at one point and did not complete his intake or application paperwork.

26. When Carmona completed his application to continue his employment, Tsekos told him that he would have a job at Greco.

Carmona informs Tsekos and RFD of his intention to file a workers' compensation claim; Tsekos and RFD illegally retaliate and withhold lawfully earned wages; Greco furthers the retaliation by illegally firing and/or failing to hire Carmona

27. After working through approximately two weeks of constant pain, Carmona's injury became so overwhelming that he could barely move his arm. On or about July 27, 2018,

4

Carmona went to the doctor. His physician determined that he needed to remain off of work until August 10.

28. The following day, on or about Saturday, July 28, 2018, Carmona visited RFD and informed Tsekos in-person of this development, provided him with a doctor's note, and stated that he intended to file for workers' compensation.

29. Tsekos responded to the news of Carmona's pending filing of a workers' compensation claim by instructing Carmona to lie about his injury. Tsekos ordered him to return to work that upcoming Monday as a driver, after the sale was complete. He further instructed him to and continue working until that following Friday, after the company sale was complete and Greco was the new company owner.

30. During this August 11 conversation, Tsekos instructed Carmona to go to the new owners, that following Friday, August 3, 2018, and lie. He ordered Carmona to say that he suffered the injury *after* RFD had been sold so that the accompanying workers' compensation claim would be assessed to the Greco's insurance, not his own. Tsekos told Carmona that he wanted to "pin it" on Greco's insurance.

31. Carmona refused Tsekos's order to lie and commit insurance fraud.

32. In response to Carmona's refusal, Tsekos told him, "You don't fuck with my insurance."

33. On or about August 2, 2018, Carmona returned to RFD to speak with Tsekos after he did not receive his next scheduled paycheck.

34. Tsekos first claimed that the check had been mailed, but Carmona said he never received it. Tsekos eventually admitted that he had thrown the check in the trash.

35. To date, Carmona has never received his final paycheck from RFD.

36. On or about August 9 or 10, Carmona had a follow-up appointment with his physician. He learned that he could not yet return to work, that he would need additional time off to heal, and that he might require surgery.

37. Carmona repeatedly attempted to contact Tsekos between August 2 and August 11, 2018, but received no response.

38. On or about August 11, 2018, after being repeatedly ignored by Tsekos, Carmona again visited RFD to provide Tsekos with his most recent doctor's note.

39. When Tsekos saw Carmona, he said, "What the fuck are you doing here? You were not hired by the new company." Tsekos told Carmona that he had not been included in the list of names of employees whose jobs were maintained under the new ownership. From where Carmona was standing, he could clearly see that his name was, in fact, written on a list of names of drivers who would remain employed by Greco. Tsekos then walked away and refused to speak further with Carmona.

40. Mateo, the new Greco Vice President, came over and told Carmona that he no longer worked at either company because he "already [had] a claim against George," and had "sued" Tsekos over his injury, a likely reference to Carmona potentially filing a workers' compensation claim.

41. Greco participated in and furthered RFD and Tsekos's illegal acts by firing, refusing to hire, and/or withdrawing Carmona's offer because he refused Tsekos's orders to commit insurance fraud and/or because he filed a workers' compensation claim.

42. Alternatively, Greco is a proper defendant under the theory of successor liability.

43. Greco knew, or should have known of Carmona's claims against Tsekos and RFD prior to its acquisition of RFD. Indeed, the General Manager, Mateo, that Greco hired was a

6

former RFD employee and participated in the efforts to deny Carmona any hope of employment with Greco.

44. Upon information and belief, after Tsekos, RFD, and Greco illegally fired Carmona, and refused him his final earned paycheck, they compounded their illegal activity by lying to the workers' compensation insurance adjustor and claiming that Carmona never gave notice of his injury until after he was fired, and also that the injury was suffered in June 2018. The adjustor saw past these lies and awarded Carmona his workers' compensation benefits.

## COUNT I – WHISTLEBLOWER ACT - RETALIATORY DISCHARGE
## DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION

45. Paragraphs 1 though 44 are incorporated by reference.

46. Carmona brings Count I against RFD for violation of the Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.*

47. The Whistleblower Act prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state or federal law. 740 ILCS 174/20.

48. RFD was Carmona's "employer," and Carmona was RFD's "employee," as those terms are defined in the Act. 740 ILCS 174/5.

49. RFD fired Carmona in violation of the Whistleblower Act because he refused to agree to Tsekos's illegal scheme to fraudulently cover up and/or misrepresent the nature and timing of his injury, lie to Greco about the timing of his injury, and commit insurance fraud.

50. An employee may bring a civil action against an employer who violates the Whistleblower Act. 740 ILCS 174/30.

51. RFD violated the Whistleblower Act by firing Carmona.

As the direct result of RFD's violation of the Whistleblower Act, Carmona has suffered loss of income, both front pay and back pay, benefits, and career opportunities, as well as humiliation and emotional distress.

### COUNT II – WHISTLEBLOWER ACT - RETALIATORY DISCHARGE
### DEFENDANT GEORGE TSEKOS

52. Paragraphs 1 though 44 are incorporated by reference.

53. Carmona brings Count II against Tsekos for violation of the Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.*

54. The Whistleblower Act prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state or federal law. 740 ILCS 174/20.

55. Tsekos was Carmona's "employer," and Carmona was RFD's "employee," as those terms are defined in the Act. 740 ILCS 174/5.

56. Tsekos fired Carmona in violation of the Whistleblower Act because he refused to agree to Tsekos's illegal scheme to fraudulently cover up and/or misrepresent the nature and timing of his injury, lie to Greco about the timing of his injury, and commit insurance fraud.

57. An employee may bring a civil action against an employer who violates the Whistleblower Act. 740 ILCS 174/30.

58. Tsekos violated the Whistleblower Act by firing Carmona.

As the direct result of Teskos's violation of the Whistleblower Act, Carmona has suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

## COUNT III – COMMON LAW RETALIATORY DISCHARGE
## DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION

59. Paragraphs 1 though 44 are incorporated by reference.

60. Carmona brings Count III against Defendant RFD based on the common law tort of retaliatory discharge.

61. Illinois law permits an employee to recover damages for retaliatory discharge from his former employer, if the former employer discharges the employee in retaliation for refusing to participate in activity that the employee believes to be a violation of public policy, including refusing to commit a crime on the employer's behalf.

62. Illinois law similarly permits an employee to recover damages for retaliatory discharge from his former employer, if the former employer discharges the employee in retaliation for exercising rights provided for by the Illinois Workers' Compensation Act ("WCA").

63. The WCA provides, in relevant part, that it is unlawful for any employer to discharge, threaten to discharge, or refuse to hire an employee over his exercise of rights or remedies granted to him under the WCA. 820 Ill. Comp. Stat. Ann. 305/4.

64. RFD discharged Carmona in retaliation for the following protected acts, all of which contravene public policy:

    a. Refusing to lie about the timing of his workplace injury and commit insurance fraud; and

    b. Exercising his rights as provided for under the WCA and filing a workers' compensation claim.

9

65. As the direct result of the illegal termination of his employment, Carmona suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

### COUNT IV – COMMON LAW RETALIATORY DISCHARGE
### BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS

66. Paragraphs 1 though 44 are incorporated by reference.

67. Carmona brings Count IV against Defendant Greco based on the common law tort of retaliatory discharge.

68. Illinois law permits an employee to recover damages for retaliatory discharge from his former employer, if the former employer discharges the employee in retaliation for exercising his rights as set forth under the WCA.

69. The WCA provides, in relevant part, that it is unlawful for any employer to discharge, threaten to discharge, or refuse to hire an employee over his exercise of rights or remedies granted to him under the WCA. 820 Ill. Comp. Stat. Ann. 305/4.

70. Greco either discharged or refused to hire Carmona in retaliation for exercising his rights as provided for under the WCA and filing a workers' compensation claim.

71. Greco committed the tort of retaliatory discharge when, by way of its agent, Mateo, it either refused to honor Carmona's offer of employment with Greco and/or terminated his position with Greco in retaliation for his filing a workers' compensation claim.

72. As the direct result of the illegal termination of his employment, Carmona suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

## COUNT V – DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION ILLINOIS WAGE PAYMENT AND COLLECTION ACT – UNPAID FINAL PAYCHECK

73. Paragraphs 1 though 44 are incorporated by reference.

74. The Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.* ("the Wage Act"), requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/5.

75. Carmona was owed his final paycheck, approximately $900 gross, when his employment was illegally terminated.

76. Defendant RFD failed to pay him his final paycheck.

77. RFD violated the Wage Act by failing to pay Carmona's final compensation.

78. As a direct result of RFD's violation of the Wage Act, Carmona was damaged in the form of being denied his final earned compensation.

## COUNT VI – DEFENDANT GEORGE TSEKOS ILLINOIS WAGE PAYMENT AND COLLECTION ACT – UNPAID FINAL PAYCHECK

79. Paragraphs 1 though 44 are incorporated by reference.

80. The Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.* ("the Wage Act"), requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/5.

81. Carmona was owed his final paycheck, approximately $900 gross, when his employment was illegally terminated.

82. Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 ILCS 115/13.

83. Defendant Tsekos knew that Carmona had earned, and was owed his final paycheck, and made the decision to refuse to pay Carmona his earned compensation.

84. By refusing to pay Carmona for his earned final compensation, Tsekos knowingly violated the Wage Act by failing to pay Carmona's final compensation to which he was lawfully entitled.

85. As a direct result of RFD's violation of the Wage Act, Carmona was damaged in the form of being denied his final earned compensation.

### COUNT VII – DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION ILLINOIS MINIMUM WAGE LAW – UNPAID OVERTIME WAGES

86. Paragraphs 1 through 44 are incorporated by reference.

87. The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

88. RFD was Carmona's employer, and Carmona RFD's employee, within the meaning of the IMWL. 820 ILCS 105/3(c), (d).

89. RFD, by its management or agents, violated the IMWL by requiring Carmona to work in excess of forty hours per week, failing to properly and accurately record all hours that he worked, and failing to pay him time-and-a-half wages for all hours worked over forty in any given workweek between January 2017 and his firing, which resulted in him receiving less than the legal overtime rate for his overtime hours.

90. RFD's violation of the IMWL was willful.

91. As a direct result of RFD's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

## COUNT VIII – DEFENDANT GEORGE TSEKOS
## ILLINOIS MINIMUM WAGE LAW – UNPAID OVERTIME WAGES

92. Paragraphs 1 through 44 are incorporated by reference.

93. The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

94. Tsekos was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the IMWL as he exercised direct control over Carmona's rate of pay and compensation. 820 ILCS 105/3(c), (d).

95. As a direct result of RFD's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

## COUNT IX – BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS
## ILLINOIS MINIMUM WAGE LAW – UNPAID OVERTIME WAGES

96. Paragraphs 1 through 44 are incorporated by reference.

97. The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

98. RFD and Tsekos were Carmona's employer, and Carmona was RFD and Tsekos's employee, within the meaning of the IMWL as they exercised direct control over Carmona's rate of pay and compensation. 820 ILCS 105/3(c), (d).

99. Greco, by virtue of its acquisition of RFD, is liable for their IMWL violations under a theory of successor liability.

100. As a direct result of Greco's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

## COUNT X – DEFENDANT GEORGE TSEKOS
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES

101. Paragraphs 1 through 44 are incorporated by reference.

102. The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

103. Tsekos was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

104. Tsekos, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

105. Tsekos's violation of the FLSA was willful.

106. As a direct result of Tsekos's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

## COUNT XI – DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES

107. Paragraphs 1 through 44 are incorporated by reference.

108. The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

109. RFD was Carmona's employer, and Carmona RFD's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

110. RFD, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

111. RFD's violation of the FLSA was willful.

112. As a direct result of RFD's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

### COUNT XII – BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES

113. Paragraphs 1 through 44 are incorporated by reference.

114. The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

115. Greco, by virtue of its acquisition of RFD and federal recognition of successor liability, was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

116. Tsekos, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

117. Tsekos's violation of the FLSA was willful.

118. As a direct result of Tsekos's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

Wherefore, Plaintiff Gilberto Carmona requests that the Court to enter judgment in their favor against Defendants T& L Produce d/b/a Roins Food Distribution, Bellissimo Distribution, LLC d/b/a Greco & Sons, and George Teskos, awarding him:

A. Damages in the form of lost wages, both front pay and back pay, and overtime pay;

B. Liquidated damages in the amount of double his actual damages;

C. Interest at the rate of two percent per month from the time each withheld wage payment was due;

D. Punitive damages;

E. His reasonable attorneys' fees; and

F. The costs of this action.

### Jury Demand

Plaintiff requests a trial by jury.

Respectfully Submitted,

FAVARO & GORMAN, LTD.

By: *Max Barack*
One of the Plaintiff's attorneys

Dennis R. Favaro
dfavaro@favarogorman.com
Patrick J. Gorman
pgorman@favarogorman.com
Max Barack
mbarack@favarogorman.com
Favaro & Gorman, Ltd.
835 Sterling Avenue, Suite 100
Palatine, Illinois 60067
(847) 934-0060