| | |
|---|---|
| GILBERTO CARMONA,<br><br>                Plaintiff,<br><br>vs.<br><br>T& L PRODUCE, INC., d/b/a ROINS<br>FOOD DISTRIBUTION, BELLISSIMO<br>DISTRIBUTION, LLC, d/b/a GRECO &<br>SONS, and GEORGE TSEKOS<br><br>                Defendants. | No. 19-cv-08377<br><br>Trial by Jury Demanded |

## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendants T& L Produce d/b/a Roins Food Distribution ("RFD") and George Tsekos ("Tsekos," collectively with RFD, "Defendants"), by their undersigned attorney, herein provide their answers and affirmative defenses to Plaintiff, Gilberto Carmona's ("Carmona") Complaint as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

**ANSWER:**    Defendants admit only that Carmona purports to bring Counts X, XI and XII, alleging failure to pay overtime pursuant to 29 U.S.C. § 216(b) (FLSA), which provides jurisdiction in this Court pursuant to 28 U.S.C. § 1331. Defendants deny the Court has jurisdiction over Counts I through VI pursuant to 28 U.S.C. § 1367(a). Counts I through VI, alleging state law claims relating to Carmona's separation from RFD, are not so related to his FLSA claim such that they form part of the same case or controversy under Article III of the United States Constitution.

1

2.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(l), (2) (venue, generally) and 29 U.S.C. § 216(b) (FLSA).

**ANSWER:**     Defendants admit only that the acts or occurrences alleged in the Complaint occurred in Cook County, Illinois, and therefore, venue is proper in the Eastern Division of the Northern District of Illinois. Defendants deny the remaining allegations contained in Paragraph 2.

## Parties

3.     Plaintiff, Gilberto Carmona ("Carmona"), is a former employee of Defendants T & L Produce d/b/a Roins Food Distribution, George Tsekos, and Bellissimo Distribution, LLC d/b/a Greco & Sons.

**ANSWER:**     Defendants admit only that Carmona is a former employee of RFD but denies Carmona is a former employee of Tsekos. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 and, therefore, denies them.

4.     Defendant T & L Produce d/b/a Roins Food Distribution ("RFD") is an Illinois-based corporation that was recently purchased by Defendant Bellissimo Distribution, LLC. RFD is a wholesale food delivery company.

**ANSWER:**     Defendants admit only that RFD was an Illinois corporation, which sold all or substantially all of its assets to Defendant Bellissimo Distribution, LLC, d/g/a Greco & Sons ("Greco") on or about July 30, 2018. Defendants deny the remaining allegations contained in Paragraph 4.

5.     George Tsekos ("Tsekos") is a former owner of RFD and former officer of Defendant Bellissimo Distribution, LLC d/b/a Greco & Sons.

**ANSWER:**     Defendants admit only that Tsekos formerly owned an interest in RFD. Defendants deny the remaining allegations contained in Paragraph 5.

6.     Defendant Bellissimo Distribution, LLC d/b/a Greco & Sons ("Greco") is an Illinois-based corporation and wholesale food delivery company, that purchased Defendant RFD.

**ANSWER:** Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 and, therefore, denies them.

## Factual Allegations

7. Carmona was first hired by RFD and Tsekos in 2002 as a delivery driver.

**ANSWER:** Defendants admit only RFD hired Carmona as a delivery driver in 2002. Defendants deny the remaining allegations contained in Paragraph 7.

8. Carmona remained employed by RFD in his capacity as a driver until his illegal firing in August 2018.

**ANSWER:** Defendants deny the allegations contained in Paragraph 8.

9. Carmona's job duties included delivering wholesale food orders from RFD's warehouse to various restaurants throughout the Chicago-area.

**ANSWER:** Defendants admit the allegations contained in Paragraph 9.

Carmona regularly worked in excess of forty hours

10. Historically, Carmona's shifts ran from approximately 6:00 a.m. to approximately 2:00 p.m. He worked Monday through Friday, and every other Saturday.

**ANSWER:** Defendants admit the allegations contained in Paragraph 10.

11. Carmona was paid $19.75 per hour for either forty or forty-eight hours per week, depending on whether he worked a Saturday that week.

**ANSWER:** Defendants deny the allegations contained in Paragraph 11.

12. Beginning in approximately January 2017, Tsekos instructed Carmona to begin his shifts at 3:00 a.m. so he could go to the market to pick up additional food for delivery. His shifts were still scheduled to end at 2:00 p.m.

**ANSWER:** Defendants deny the allegations contained in Paragraph 12.

13.     Even though Carmona had begun working fifty-five and fifty-eight hours per week, respectively, he continued to be paid for forty and forty-eight hours per week.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 13.


14.     This meant that beginning in January 2017, Carmona was working either fifteen or eighteen hours per week, for which he was receiving no compensation, including no additional overtime pay.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 14.


15.     These additional hours worked by Carmona were performed off-the-clock and thus not recorded.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 15.


Carmona suffers a workplace injury

16.     On or about July 10, 2018, Carmona injured his shoulder while making a delivery. When he returned to RFD's facility at the end of his shift, he also went to the main office to report his injury, in-person, to Tsekos. Tsekos was away from the office, and an office employee instructed Carmona to return the next day to meet Tsekos.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, denies them.


17.     He sent Tsekos a text message late that same evening, reporting the injury and requesting that Tsekos provide him with a helper.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 17.


18.     Previously, Tsekos had granted other injured drivers' requests and provided them with a helper to lift boxes for the injured driver. The helper would have lifted boxes for Carmona while Carmona drove the truck and interacted with the delivery recipients.

**ANSWER:**     Defendants admit only that, from time to time, Tsekos accommodated drivers' requests for help lifting boxes. Defendants deny the remaining allegations contained in Paragraph 18.

19.     Carmona repeatedly requested Tsekos provide him a helper, via text message and in-person, but never received his requested assistance.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 19.


20.     Carmona continued performing his job for approximately two weeks, working through the pain in his shoulder.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and, therefore, denies them.


Greco purchases RFD

21.     Upon information and belief, in or about approximately August 2018, ownership of RFD began to transfer. Greco had already purchased, or been in the process of purchasing RFD throughout the summer of 2018.

**ANSWER:**     Defendants admit only that it sold all or substantially all of its assets to Greco on or about July 30, 2018. Defendants deny the remaining allegations contained in Paragraph 21.


22.     On or about July 25, 2018, RFD held a company-wide meeting. During the meeting, employees were notified of the company's purchase by Greco, informed that the transfer in ownership would take effect on Monday, July 30, 2018, that Tsekos would remain on in a managerial role, and that Mateo (last name unknown), would be promoted over Tsekos to the role of Vice President.

**ANSWER:**     Defendants admit only that on or about July 25, 2018, RFD had a meeting to which it invited all of its current employees and notified them that RFD would sell all or substantially all of its assets to Greco on or about July 30, 2018. Defendants deny the remaining allegations contained in Paragraph 22.


23.     Carmona arrived late to the meeting due to his work completing his shift.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and, therefore, denies them.

24.     RFD employees, including Carmona, were also informed that they would remain employed, though they would need to fill out applications. Carmona filled out the necessary application paperwork and turned it in to a Greco representative.

**ANSWER:**     Defendants deny the allegations contained in the first sentence of Paragraph 24.

Defendants lack information sufficient to form a belief as to the truth of the allegations contained

in the second sentence of Paragraph 24 and, therefore, denies them.


25.     Another employee, Omar (last name unknown), stormed out of the meeting at one point and did not complete his intake or application paperwork.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 25 and, therefore, denies them.


26.     When Carmona completed his application to continue his employment, Tsekos told him that he would have a job at Greco.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 26.


Carmona informs Tsekos and RFD of his intention to file a workers' compensation claim; Tsekos and RFD illegally retaliate and withhold lawfully earned wages; Greco furthers the retaliation by illegally firing and/or failing to hire Carmona

27.     After working through approximately two weeks of constant pain, Carmona's injury became so overwhelming that he could barely move his arm. On or about July 27, 2018, Carmona went to the doctor. His physician determined that he needed to remain off of work until August 10.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 27 and, therefore, denies them.


28.     The following day, on or about Saturday, July 28, 2018, Carmona visited RFD and informed Tsekos in-person of this development, provided him with a doctor's note, and stated that he intended to file for workers' compensation.

**ANSWER:**     Defendants admit that on or about July 28, 2018, Carmona reported to RFD that he

injured his right shoulder in June 2018, and provided RFD a letter from Laura J. Zimmermann,

MD of Rush University Medical Center, prompting HR for RFD to complete an Employee Injury

Report for Carmona and notify its workers compensation insurer of the reported injury. Defendants

deny the remaining allegations contained in Paragraph 28.

29.     Tsekos responded to the news of Carmona's pending filing of a workers' compensation claim by instructing Carmona to lie about his injury. Tsekos ordered him to return to work that upcoming Monday as a driver, after the sale was complete. He further instructed him to and continue working until that following Friday, after the company sale was complete and Greco was the new company owner.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 29.

30.     During this August 11 conversation, Tsekos instructed Carmona to go to the new owners, that following Friday, August 3, 2018, and lie. He ordered Carmona to say that he suffered the injury after RFD had been sold so that the accompanying workers' compensation claim would be assessed to the Greco's insurance, not his own. Tsekos told Carmona that he wanted to "pin it" on Greco's insurance.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 30.

31.     Carmona refused Tsekos's order to lie and commit insurance fraud.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 31.

32.     In response to Carmona's refusal, Tsekos told him, "You don't fuck with my insurance."

**ANSWER:**     Defendants deny the allegations contained in Paragraph 32.

33.     On or about August 2, 2018, Carmona returned to RFD to speak with Tsekos after he did not receive his next scheduled paycheck.

**ANSWER:**     Defendants admit only that on or about August 2, 2018, Carmona spoke to Tsekos

at RFD's former facility. Defendants lack information sufficient to form a belief as to the truth of

the remaining allegations contained in Paragraph 33 and, therefore, denies them.

34.     Tsekos first claimed that the check had been mailed, but Carmona said he never received it. Tsekos eventually admitted that he had thrown the check in the trash.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 34.

35.     To date, Carmona has never received his final paycheck from RFD.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and, therefore, denies them.

36.     On or about August 9 or 10, Carmona had a follow-up appointment with his physician. He learned that he could not yet return to work, that he would need additional time off to heal, and that he might require surgery.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and, therefore, denies them.

37.     Carmona repeatedly attempted to contact Tsekos between August 2 and August 11, 2018, but received no response.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the allegations of Paragraph 37 and, therefore, denies them.

38.     On or about August 11, 2018, after being repeatedly ignored by Tsekos, Carmona again visited RFD to provide Tsekos with his most recent doctor's note.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and, therefore, denies them.

39.     When Tsekos saw Carmona, he said, "What the fuck are you doing here? You were not hired by the new company." Tsekos told Carmona that he had not been included in the list of names of employees whose jobs were maintained under the new ownership. From where Carmona was standing, he could clearly see that his name was, in fact, written on a list of names of drivers who would remain employed by Greco. Tsekos then walked away and refused to speak further with Carmona.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 39.

40.     Mateo, the new Greco Vice President, came over and told Carmona that he no longer worked at either company because he "already [had] a claim against George," and had "sued" Tsekos over his injury, a likely reference to Carmona potentially filing a workers' compensation claim.

**ANSWER:**   Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and, therefore, denies them.

41.   Greco participated in and furthered RFD and Tsekos's illegal acts by firing, refusing to hire, and/or withdrawing Carmona's offer because he refused Tsekos's orders to commit insurance fraud and/or because he filed a workers' compensation claim.

**ANSWER:**   Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and, therefore, denies them.

42.   Alternatively, Greco is a proper defendant under the theory of successor liability.

**ANSWER:**   Defendants object to, and therefore deny, the allegations contained in Paragraph 42 as they constitute a legal conclusion.

43.   Greco knew, or should have known of Carmona's claims against Tsekos and RFD prior to its acquisition of RFD. Indeed, the General Manager, Mateo, that Greco hired was a former RFD employee and participated in the efforts to deny Carmona any hope of employment with Greco.

**ANSWER:**   Defendant lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and, therefore, denies them.

44.   Upon information and belief, after Tsekos, RFD, and Greco illegally fired Carmona, and refused him his final earned paycheck, they compounded their illegal activity by lying to the workers' compensation insurance adjustor and claiming that Carmona never gave notice of his injury until after he was fired, and also that the injury was suffered in June 2018. The adjustor saw past these lies and awarded Carmona his workers' compensation benefits.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 44 to the extent they relate to Tsekos or RFD. Defendants lack information sufficient to form a belief as to the remaining allegations of Paragraph 44 and, therefore, denies them.

## COUNT I - WHISTLEBLOWER ACT - RETALIATORY DISCHARGE
## DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION

45.   Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:** Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

46. Carmona brings Count I against RFD for violation of the Illinois Whistleblower Act. 740 ILCS 174/ 1, et seq.

**ANSWER:** Defendants admit Carmona purports to bring Count I against RFD for violation of the Illinois Whistleblower Act. 740 ILCS 174/ 1, et seq.

47. The Whistleblower Act prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state or federal law. 740 ILCS 174/20.

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 47 as they constitute a legal conclusion.

48. RFD was Carmona's "employer," and Carmona was RFD's "employee," as those terms are defined in the Act. 740 ILCS 174/5.

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 48 as they constitute a legal conclusion.

49. RFD fired Carmona in violation of the Whistleblower Act because he refused to agree to Tsekos's illegal scheme to fraudulently cover up and/or misrepresent the nature and timing of his injury, lie to Greco about the timing of his injury, and commit insurance fraud.

**ANSWER:** Defendants deny the allegations contained in Paragraph 49.

50. An employee may bring a civil action against an employer who violates the Whistleblower Act. 740 ILCS 174/30.

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 50 as they constitute a legal conclusion.

51. RFD violated the Whistleblower Act by firing Carmona.

**ANSWER:** Defendants deny the allegations contained in Paragraph 51.

## COUNT II - WHISTLEBLOWER ACT - RETALIATORY DISCHARGE
## DEFENDANT GEORGE TSEKOS

52.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


53.     Carmona brings Count II against Tsekos for violation of the Illinois Whistleblower Act. 740 ILCS 174/1, et seq.

**ANSWER:**     Defendants admit Carmona purports to bring Count II against Tsekos for violation

of the Illinois Whistleblower Act. 740 ILCS 174/ 1, et seq.


54.     The Whistleblower Act prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state or federal law. 740 ILCS 174/20.

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 54

as they constitute a legal conclusion.


55.     Tsekos was Carmona's "employer," and Carmona was RFD's "employee," as those terms are defined in the Act. 740 ILCS 174/5.

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 55

as they constitute a legal conclusion.


56.     Tsekos fired Carmona in violation of the Whistleblower Act because he refused to agree to Tsekos's illegal scheme to fraudulently cover up and/or misrepresent the nature and timing of his injury, lie to Greco about the timing of his injury, and commit insurance fraud.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 56.


57.     An employee may bring a civil action against an employer who violates the Whistleblower Act. 740 ILCS 174/30.

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 57

as they constitute a legal conclusion.

26715555.1

58.     Tsekos violated the Whistleblower Act by firing Carmona.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 58.


## COUNT III - COMMON LAW RETALIATORY DISCHARGE
## DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION

59.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


60.     Carmona brings Count III against Defendant RFD based on the common law tort
of retaliatory discharge.

**ANSWER:**     Defendants admit Carmona purports to bring Count III against RFD based on the

common law tort of retaliatory discharge.


61.     Illinois law permits an employee to recover damages for retaliatory discharge from
his former employer, if the former employer discharges the employee in retaliation for refusing to
participate in activity that the employee believes to be a violation of public policy, including
refusing to commit a crime on the employer's behalf.

**ANSWER:**     Defendants object to, and therefore deny, the allegations contain in Paragraph 61

as they state a legal conclusion.


62.     Illinois law similarly permits an employee to recover damages for retaliatory
discharge from his former employer, if the former employer discharges the employee in retaliation
for exercising rights provided for by the Illinois Workers' Compensation Act ("WCA'').

**ANSWER:**     Defendants object to, and therefore deny, the allegations contain in Paragraph 62

as they state a legal conclusion.


63.     The WCA provides, in relevant part, that it is unlawful for any employer to
discharge, threaten to discharge, or refuse to hire an employee over his exercise of rights or
remedies granted to him under the WCA. 820 Ill. Comp. Stat. Ann. 305/4.

**ANSWER:**    Defendants object to, and therefore deny, the allegations contain in Paragraph 64 as they state a legal conclusion.

64.    RFD discharged Carmona in retaliation for the following protected acts, all of which contravene public policy:

        a.    Refusing to lie about the timing of his workplace injury and commit insurance fraud; and

        b.    Exercising his rights as provided for under the WCA and filing a workers' compensation claim.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 64.

65.    As the direct result of the illegal termination of his employment, Carmona suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 65.

## COUNT IV - COMMON LAW RETALIATORY DISCHARGE
## BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS

66.    Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

67.    Carmona brings Count IV against Defendant Greco based on the common law tort of retaliatory discharge.

**ANSWER:**    The allegations contained in Paragraph 67 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 67

68.    Illinois law permits an employee to recover damages for retaliatory discharge from his former employer, if the fom1er employer discharges the employee in retaliation for exercising his rights as set forth under the WCA.

**ANSWER:** The allegations contained in Paragraph 68 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 68.

69. The WCA provides, in relevant part, that it is unlawful for any employer to discharge, threaten to discharge, or refuse to hire an employee over his exercise of rights or remedies granted to him under the WCA. 820 Ill. Comp. Stat. Ann. 305/4.

**ANSWER:** The allegations contained in Paragraph 69 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 69.

70. Greco either discharged or refused to hire Carmona in retaliation for exercising his rights as provided for under the WCA and filing a workers' compensation claim.

**ANSWER:** The allegations contained in Paragraph 70 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 70.

71. Greco committed the tort of retaliatory discharge when, by way of its agent, Mateo, it either refused to honor Carmona' s offer of employment with Greco and/or terminated his position with Greco in retaliation for his filing a workers' compensation claim.

**ANSWER:** The allegations contained in Paragraph 71 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 71.

72. As the direct result of the illegal termination of his employment, Carmona suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

**ANSWER:** The allegations contained in Paragraph 72 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 72.

14

**COUNT V - DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION
ILLINOIS WAGE PAYMENT AND COLLECTION ACT - UNPAID FINAL
PAYCHECK**

73.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


74.     The Illinois Wage Payment and Collection Act, 820 ILCS 115 et seq. ("the Wage
Act"), requires employers to pay their employees according to their agreements and to pay
employees all earned wages or final compensation. 820 ILCS 115/5.

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 74

as they state a legal conclusion.


75.     Carmona was owed his final paycheck, approximately $900 gross, when his
employment was illegally terminated.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 75.


76.     Defendant RFD failed to pay him his final paycheck.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 76.


77.     RFD violated the Wage Act by failing to pay Carmona's final compensation.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 77.


78.     As a direct result of RFD's violation of the Wage Act, Carmona was damaged in
the form of being denied his final earned compensation.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 78.


**COUNT VI - DEFENDANT GEORGE TSEKOS
ILLINOIS WAGE PAYMENT AND COLLECTION ACT - UNPAID FINAL
PAYCHECK**

79.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:** Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

80. The Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq*. ("the Wage Act"), requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/5.

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 80 as they state a legal conclusion.

81. Carmona was owed his final paycheck, approximately $900 gross, when his employment was illegally terminated.

**ANSWER:** Defendants deny the allegations contained in Paragraph 81.

82. Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 ILCS 115/13.

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 82 as they state a legal conclusion.

83. Defendant Tsekos knew that Carmona had earned, and was owed his final paycheck, and made the, decision to refuse to pay Carmona his earned compensation.

**ANSWER:** Defendants deny the allegations contained in Paragraph 83.

84. By refusing to pay Carmona for his earned final compensation, Tsekos knowingly violated the Wage Act by failing to pay Carmona' s final compensation to which he was lawfully entitled.

**ANSWER:** Defendants deny the allegations contained in Paragraph 84.

85. As a direct result of RFD's violation of the Wage Act, Carmona was damaged in the form of being denied his final earned compensation.

**ANSWER:** Defendants deny the allegations contained in Paragraph 85.

26715555.1

## COUNT VII - DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION
## ILLINOIS MINIMUM WAGE LAW – UNPAID OVERTIME WAGES

86.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


87.     The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 87

as they state a legal conclusion.


88.     RFD was Carmona's employer, and Carmona RFD's employee, within the meaning of the IMWL. 820 ILCS 105/3(c), (d).

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 88

as they state a legal conclusion.


89.     RFD, by its management or agents, violated the IMWL by requiring Carmona to work in excess of forty hours per week, failing to properly and accurately record all hours that he worked, and failing to pay him time-and-a-half wages for all hours worked over forty in any given workweek between January 2017 and his firing, which resulted in him receiving less than the legal overtime rate for his overtime hours.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 89.


90.     RFD' s violation of the IMWL was willful.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 90.


91.     As a direct result of RFD's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 91.

26715555.1

## COUNT VIII - DEFENDANT GEORGE TSEKOS
## ILLINOIS MINIMUM WAGE LAW – UNPAID OVERTIME WAGES

92.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


93.     The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 93

as they state a legal conclusion.


94.     Tsekos was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the IMWL as he exercised direct control over Carmona's rate of pay and compensation. 820 ILCS 105/3(c), (d).

**ANSWER:**     Defendants object to, and therefore deny, the allegations contained in Paragraph 94

as they state a legal conclusion.


95.     As a direct result of RFD's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 95.


## COUNT IX - BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS
## ILLINOIS MINIMUM WAGE LAW - UNPAID OVERTIME WAGES

96.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are

incorporated herein by reference.


97.     The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 ILCS 105/3(c), (d).

26715555.1

**ANSWER:**     The allegations contained in Paragraph 97 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 97.

98.     RFD and Tsekos were Carmona's employer, and Carmona was RFD and Tsekos's employee, within the meaning of the IMWL as they exercised direct control over Carmona's rate of pay and compensation. 820 ILCS 105/3(c), (d).

**ANSWER:**     The allegations contained in Paragraph 98 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 98.

99.     Greco, by virtue of its acquisition of RFD, is liable for their IMWL violations under a theory of successor liability.

**ANSWER:**     The allegations contained in Paragraph 99 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 99.

100.     As a direct result of Greco's violation of the IMWL, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:**     The allegations contained in Paragraph 100 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 100.

## COUNT X - DEFENDANT GEORGE TSEKOS
## FAIR LABOR STANDARDS ACT - UNPAID OVERTIME WAGES

101.     Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**     Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

26715555.1

102.    The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek.  29 U.S.C. § 207(a)(l).

**ANSWER:**    Defendants object to, and therefore deny, the allegations contained in Paragraph 102 as they state a legal conclusion.

103.    Tsekos was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

**ANSWER:**    Defendants object to, and therefore deny, the allegations contained in Paragraph 103 as they state a legal conclusion.

104.    Tsekos, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 104.

105.    Tsekos's violation of the FLSA was willful.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 105.

106.    As a direct result of Tsekos's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 106.

## COUNT XI - DEFENDANT T& L PRODUCE D/B/A ROINS FOOD DISTRIBUTION FAIR LABOR STANDARDS ACT - UNPAID OVERTIME WAGES

107.    Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

108.    The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(l).

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 108 as they state a legal conclusion.

109. RFD was Carmona's employer, and Carmona RFD's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

**ANSWER:** Defendants object to, and therefore deny, the allegations contained in Paragraph 109 as they state a legal conclusion.

110. RFD, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

**ANSWER:** Defendants deny the allegations contained in Paragraph 110.

111. RFD's violation of the FLSA was willful.

**ANSWER:** Defendants deny the allegations contained in Paragraph 111.

112. As a direct result of RFD's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:** Defendants deny the allegations contained in Paragraph 112.

### COUNT XII - BELLISSIMO DISTRIBUTION, LLC D/B/A GRECO & SONS FAIR LABOR STANDARDS ACT - UNPAID OVERTIME WAGES

113. Paragraphs 1 through 44 are incorporated by reference.

**ANSWER:** Defendants repeat and reallege their answers to Paragraph 1 through 44, which are incorporated herein by reference.

114. The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times his regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(l).

26715555.1

**ANSWER:** The allegations contained in Paragraph 114 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 114.

115. Greco, by virtue of its acquisition of RFD and federal recognition of successor liability, was Carmona's employer, and Carmona Tsekos's employee, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

**ANSWER:** The allegations contained in Paragraph 115 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 115.

116. Tsekos, by his management or agents, violated the FLSA by failing to pay Carmona all of his earned overtime wages for his hours worked over forty (40), which resulted in his receiving less than the legal overtime rate for her overtime hours.

**ANSWER:** The allegations contained in Paragraph 116 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 116.

117. Tsekos's violation of the FLSA was willful.

**ANSWER:** The allegations contained in Paragraph 117 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 117.

118. As a direct result of Tsekos's violation of the FLSA, Carmona suffered the loss of compensation in the form of overtime pay.

**ANSWER:** The allegations contained in Paragraph 118 are not directed towards Defendants; therefore, no response is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 118.

26715555.1

## AFFIRMATIVE DEFENSES

1.      On information and belief, certain of Carmona's claims appear to concern activities that occurred more than two years before he filed the Complaint. Carmona's claims arising from such activities are barred, in whole or in part, by the applicable statute of limitations.

2.      Carmona's claims are barred, in whole or in part, by his failure to mitigate his damages.

3.      Carmona's claims against Tsekos are barred, in whole or in part, because Tsekos was never Carmona's employer.

4.      Carmona's claims against RFD are barred, in whole or in part, to the extent they arise out of or relate to events occurring after RFD sold all or substantially all of its assets to Greco on or about July 30, 2018.

5.      Carmona's claims are barred, in whole or in part, to the extent he waived them by failing to assert them despite knowledge of the facts necessary to assert them.

6.      Carmona's claims are barred, in whole or in part, because neither RFD nor Tsekos had any role in Greco's decision not to hire Carmona. On information and belief, Greco would have taken the same action even in the absence of the retaliatory motive about which Carmona complains.

Dated: March 6, 2020

Respectfully submitted,

T& L PRODUCE, INC., d/b/a ROINS FOOD DISTRIBUTION and GEORGE TSEKOS,

By:  */s/ Rachel L. Schaller*
      One of Their attorneys

Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: 312-527-4000

26715555.1